JEFFREY BOSSERT CLARK
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice
Washington, D.C. 20530

VALERIE K. MANN
Environmental Enforcement Section
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Tel: 202-616-8756

SHAWN N. ANDERSON
United States Attorney
Districts of Guam and the NMI
MIKEL W. SCHWAB
Assistant United States Attorney
Suite 500, Sirena Plaza
108 Hernan Cortez
Hagåtña, Guam 96910
Telephone: 671-472-7332

Attorneys for Plaintiff United States of America

# UNITED STATES DISTRICT COURT
# FOR THE TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Civil Case No. |
| ) | |
| v. ) | COMPLAINT |
| ) | |
| GUAM POWER AUTHORITY and ) | |
| MARIANAS ENERGY COMPANY, L.L.C., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

The United States of America ("United States"), by the authority of the Attorney General and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), files this Complaint and alleges as follows:

## I. NATURE OF THE ACTION

1. This is a civil action against the Guam Power Authority ("GPA") and Marianas Energy Company, L.L.C. ("MEC") (collectively the "Defendants") for violations of the Clean Air Act ("CAA" or the "Act"), 42 U.S.C. §§ 7401-7671q, at the Cabras Power Plant ("Cabras Facility") and the Piti Power Plant ("Piti Facility"), both in Piti, Guam (collectively "Facilities").

2. Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), the United States seeks injunctive relief and the assessment of civil penalties for violations of: (1) the National Emission Standards for Hazardous Air Pollutants ("NESHAP") for Coal- and Oil-Fired Electric Utility Steam Generating Units, referred to as the Mercury and Air Toxics Standards ("MATS"), set forth at 40 C.F.R. Part 63, subpart UUUUU, at the Cabras Facility; and (2) the NESHAP for Stationary Reciprocating Internal Combustion Engines, set forth at 40 C.F.R. Part 63, subpart ZZZZ ("RICE NESHAP"), at the Cabras Facility and the Piti Facility. The violations alleged in this Complaint continue to occur at the relevant units still in operation at these Facilities.

## II. JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 113(b) of the Act, 42 U.S.C. § 7413(b).

4. Venue is proper in this District pursuant to Section 113(b), 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b) and (c) and 1395(a), because the violations alleged in the Complaint are alleged to have occurred in, and Defendants conduct business in, this judicial district.

## III. AUTHORITY AND NOTICES

5. Authority to bring this action is vested in the United States Department of Justice pursuant to Section 305 of the CAA, 42 U.S.C. § 7605, and 28 U.S.C. §§ 516 and 519.

6. Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), notice of the commencement of this action has been provided to the Territory of Guam.

1

## IV. DEFENDANTS

7. Guam Power Authority is a public corporation created by the Government of Guam in 1968. 12 G.C.A. § 8101 *et seq.*

8. GPA is a "person" as defined in Section 302(e) of the Act, 42 U.S.C. § 7602(e).

9. At all times relevant to this Complaint, GPA owned and operated Cabras Units 1, 2, 3, and 4.

10. MEC is a Delaware corporation with its headquarters in Piti, Guam.

11. MEC is a "person" as defined in Section 302(e) of the Act, 42 U.S.C. § 7602(e).

12. MEC owned Piti Units 8 and 9 until January 2019.

13. At all times relevant to this Complaint, MEC operated Piti Units 8 and 9.

14. Under an Agreement dated 1996 between MEC and GPA, ownership of Piti Units 8 and 9 was transferred in January 2019 from MEC to GPA.

15. GPA is the current owner of Piti Units 8 and 9.

## V. CLEAN AIR ACT AND ASSOCIATED REGULATIONS

A. <u>National Emission Standards for Hazardous Air Pollutants ("NESHAPs")</u>

16. The Act establishes a regulatory program designed to protect and enhance the quality of the nation's air resources so as to promote the public health and welfare. 42 U.S.C. § 7401(b)(1).

17. Section 112 of the Act, 42 U.S.C. § 7412, establishes a program, the National Emission Standards for Hazardous Air Pollutants ("NESHAPs"), for controlling emissions of hazardous air pollutants ("HAPs") through the use of maximum achievable control technology to minimize HAP emissions.

18. Section 112(c) and (d) of the Act require EPA to publish a list of HAPs and a list of categories and subcategories of major and area sources of listed HAPs, and to promulgate regulations establishing emission standards, referred to as NESHAPs, for each category or subcategory of major and area sources of HAPs. The NESHAPs are codified in 40 C.F.R. Part 63.

19. HAPs are pollutants that present, or may present, a threat of adverse human health effects such as cancer and birth defects. 42 U.S.C. § 7412(b)(2). HAPs are listed in Section 112(b) of the Act, 42 U.S.C. § 7412(b), and include formaldehyde, acrolein, methanol, acetaldehyde, and mercury compounds.

20. A "stationary source" is defined as any building, structure, facility, or installation that emits or may emit any air pollutant. 42 U.S.C. § 7412(a)(3) (incorporating the definition in Section 111(a)(3) of the CAA, 42 U.S.C. § 7411(a)(3)).

21. A "major source" of HAPs is "any stationary source or group of stationary sources located within a contiguous area and under common control that emits or has the potential to emit considering controls, in the aggregate, 10 tons per year or more of any hazardous air pollutant or 25 tons per year or more of any combination of hazardous air pollutants." 42 U.S.C. § 7412(a)(1).

22. An "area source" is "any stationary source of hazardous air pollutants that is not a major source." 42 U.S.C. § 7412(a)(2).

23. CAA Section 112(i)(3) expressly prohibits operation of a stationary source in violation of an applicable NESHAP that has gone into effect: "After the effective date of any … [NESHAP] applicable to a source, no person may operate such source in violation of such standard…." 42 U.S.C. § 7412(i)(3).

B. NESHAP General Provisions: 40 C.F.R. Part 63, Subpart A

24. On March 16, 1994, EPA promulgated the NESHAP General Provisions, codified at 40 C.F.R. Part 63, Subpart A ("Subpart A"). 59 Fed. Reg. 12,430.

25. Subpart A includes general requirements that may be incorporated into NESHAPs such as the RICE NESHAP, 40 C.F.R. Part 63, Subpart ZZZZ, Table 8, and the MATS, 40 C.F.R. Part 63, Subpart UUUUU, Table 9. 40 C.F.R. § 63.1(a)(4)(i).

26. An "owner or operator" means "any person who owns, leases, operates, controls, or supervises a stationary source." 40 C.F.R. § 63.2.

27. An "affected source" is defined as a "collection of equipment, activities, or both within a single contiguous area and under common control that is included in a section 112(c)

3

source category or subcategory for which a section 112(d) standard or other relevant standard is established pursuant to section 112 of the Act." 40 C.F.R. § 63.2.

28. Pursuant to 40 C.F.R. § 63.4(a)(1), no owner or operator shall "operate any affected source in violation of the requirements of this part."

C. <u>NESHAP for Stationary Reciprocating Internal Combustion Engines: Subpart ZZZZ</u>

29. Pursuant to Section 112 of the Act, EPA promulgated the "National Emission Standards for Hazardous Air Pollutants: Stationary Reciprocating Internal Combustion Engines" (the "RICE NESHAP"), 40 C.F.R. Part 63, Subpart ZZZZ, §§ 63.6580-63.6675. The effective date of the RICE NESHAP was June 15, 2004.

30. An "affected source" to which the RICE NESHAP applies is any stationary reciprocating internal combustion engine located at a major or area source of HAP emissions. 40 C.F.R. § 63.6590(a). A stationary reciprocating internal combustion engine is defined as any internal combustion engine that uses reciprocating motion to convert heat energy into mechanical work and that is not mobile. 40 C.F.R. § 63.6585(a).

31. "Compression ignition" is defined as "a type of stationary internal combustion engine that is not a spark ignition engine." 40 C.F.R. § 63.6675.

32. A "black start engine" is defined as "an engine whose only purpose is to start up a combustion turbine." 40 C.F.R. § 63.6675.

33. A stationary reciprocating internal combustion engine located at an area source of HAP emissions is "existing" if its construction or reconstruction was commenced before June 12, 2006. 40 C.F.R. § 63.6590(a)(1)(iii).

34. The owner or operator of an existing stationary compression ignition reciprocating internal combustion engine located at an area source must comply with the applicable requirements in the RICE NESHAP by no later than May 3, 2013. 40 C.F.R. § 63.6595(a)(1).

35. The owner or operator of an existing stationary reciprocating internal combustion engine at an area source must comply with the emission requirements of Table 2d, line 3, and the applicable operating limitations of Table 2b of the RICE NESHAP. 40 C.F.R. § 63.6603(a).

Table 2d, line 3 requires that non-emergency, non-black start compression ignition reciprocating internal combustion engines meet an emission concentration for carbon monoxide ("CO") of 23 parts per million by volume dry ("ppmvd") at 15 percent $O_2$ or reduce CO emissions by 70 percent or more. 40 C.F.R. Part 63, Subpart ZZZZ, Table 2d, line 3. Table 2b contains operating limitations for owners or operators using an oxidation catalyst to limit CO concentrations in the reciprocating internal combustion engine's exhaust. 40 C.F.R. Part 63, Subpart ZZZZ, Table 2b.

36. Pursuant to 40 C.F.R. 63.6612(a), owners or operators must conduct the applicable initial performance tests within 180 days of the compliance date of May 3, 2013, making October 30, 2013 the deadline for completing the performance tests for the RICE NESHAP. An owner or operator is not required to conduct an initial performance test provided that a previous performance test meets the requirements of 40 C.F.R. § 63.6612(b)(1) through (4), which include, among other things, that the previous test must be no older than two years.

D. <u>NESHAP for Coal- and Oil-Fired Electric Utility Steam Generating Units: Subpart UUUUU</u>

37. Pursuant to Section 112 of the Act, EPA promulgated the "National Emission Standards for Hazardous Air Pollutants: Coal- and Oil-Fired Electric Utility Steam Generating Units," set forth at 40 C.F.R. Part 63, Subpart UUUUU, §§ 63.9980-63.10042, which is also known as the "Mercury Air Toxics Standard" or "MATS."

38. An "affected source" to which the MATS applies is any individual or group of two or more new, reconstructed, or existing coal- or oil-fired electric utility steam generating units ("EGU"). 40 C.F.R. § 63.9982.

39. An "EGU" is defined as "a fossil fuel-fired combustion unit of more than 25 megawatts electric ('MWe') that serves a generator that produces electricity for sale." 40 C.F.R. § 63.10042. "Fossil fuel-fired" means an EGU "that is capable of producing more than 25 MW of electrical output from the combustion of fossil fuels." Id.

40. A oil-fired EGU is defined as "an electric utility steam generating unit meeting the definition of 'fossil fuel-fired' that . . . burns oil for more than 10.0 percent of the average

5

annual heat input during the 3 previous calendar years after the compliance date for [the EGU] in [40 C.F.R.] § 63.9984 or for more than 15.0 percent of the annual heat input during any of those calendar years." 40 C.F.R. § 63.10042.

41. An EGU is "new" under the MATS if it commenced construction after May 3, 2011, and is "reconstructed" if it commenced reconstruction after that date. 40 C.F.R. § 63.9982(b) and (c). An EGU is "existing" if it is not new or reconstructed. 40 C.F.R. § 63.9982(d).

42. An existing EGU must comply with the MATS by April 16, 2015. 40 C.F.R. § 63.9984(b).

43. An EGU subject to the MATS is required at all times to meet each emission limit and work practice standard in 40 C.F.R. Part 63, Subpart UUUUU, Tables 1 through 3, that applies to such EGU. 40 C.F.R. § 63.9991(a)(1). Subpart UUUUU, Table 2, line 5 applies to existing non-continental liquid oil-fired EGUs, and establishes the emission limits for either filterable particulate matter or total HAP metals or individual HAP metals. 40 C.F.R. Part 63, Subpart UUUUU, Table 2, line 5.

44. The owner or operator of each existing non-continental liquid oil-fired EGU subject to the MATS must demonstrate initial compliance with the applicable emission limits in Table 2, line 5 of the MATS through performance testing by no later than October 13, 2015, which is 180 days after the compliance date of April 16, 2015. 40 C.F.R. § 63.9984(b) and (f); see also 40 C.F.R. § 63.10011(a).

45. Pursuant to 40 C.F.R. § 63.10030(e), owners and operators that are required to conduct an initial compliance demonstration as specified in 40 C.F.R. § 63.10011(a) must submit a Notification of Compliance Status to EPA within 60 days after completion of the initial performance test in accordance with 40 C.F.R. § 63.9(h)(2)(ii).

E. Enforcement of CAA

46. CAA Section 113(a)(3), 42 U.S.C. §7413(a)(3), authorizes EPA to bring a civil action in accordance with Section 113(b) of the CAA when EPA finds that any person has

6

violated or is in violation of CAA requirements including the federal emissions standards for HAPs at Section 112 of the Act, 42 U.S.C. § 7412.

47. CAA Section 113(b), 42 U.S.C. § 7413(b), authorizes the United States to commence a civil action against an owner or operator of an affected source for a permanent or temporary injunction, or for a civil penalty, or both, whenever such person has violated any requirement or prohibition of any rule promulgated under Section 112 of the Act, 42 U.S.C. § 7412.

48. Pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b), and 40 C.F.R. § 19.4, any person who fails to comply with the CAA or its implementing regulations shall be subject to a civil penalty in an amount up to $37,500 per day for each violation occurring after January 12, 2009 through November 2, 2015, and up to $99,681 per day for violations that occurred after November 2, 2015.

## VI. GENERAL ALLEGATIONS

49. Cabras Units 1 and 2 were constructed in 1974 and 1975 with boiler and steam turbine technology and are fueled with #6 heavy fuel oil, which is also known as Residual Fuel Oil ("RFO").

50. Cabras Units 3 and 4 were constructed in 1995-1996 and were powered by slow-speed diesel engines, which were fueled with RFO. These Units were not equipped with an oxidation catalyst, and did not reduce CO emissions.

51. Piti Units 8 and 9 were constructed in 1999 and are powered by slow-speed diesel engines, which are fueled with RFO. These Units were not equipped with an oxidation catalyst, and did not reduce CO emissions.

52. MEC operates Piti Units 8 and 9 pursuant to a contract dated 1996 that transferred ownership of Piti Units 8 and 9 to GPA in January 2019.

53. Fuel is combusted at the Facilities to generate electricity. The fuel combustion process causes hazardous air pollutants, including formaldehyde, acrolein, methanol, acetaldehyde, and mercury compounds, to be emitted to the atmosphere.

7

54. Cabras Units 1, 2, 3, and 4, and Piti Units 8 and 9 each emit air pollutants. Each unit is therefore a "stationary source," as defined at 42 U.S.C. § 7412(a)(3) and 40 C.F.R. § 63.2.

55. The Cabras Facility and the Piti Facility are each an "area source" as defined at 42 U.S.C. § 7412(a)(2) and 40 C.F.R. § 63.2.

56. At all relevant times, GPA has been "owner" and "operator" of the Cabras Units 1, 2, 3, and 4, as defined at 42 U.S.C. § 7412(a)(9) and 40 C.F.R. § 63.2. Since January 2019, GPA has been the "owner" of Piti Units 8 and 9, as defined at 42 U.S.C. § 7412(a)(9) and 40 C.F.R. § 63.2.

57. At all relevant times, MEC has been the "operator" of Piti Units 8 and 9, as defined at 42 U.S.C. § 7412(a)(9) and 40 C.F.R. § 63.2. At all relevant times until January 2019, MEC was the "owner" of Piti Units 8 and 9, as defined at 42 U.S.C. § 7412(a)(9) and 40 C.F.R. § 63.2.

58. Cabras Units 3 and 4, which were constructed in 1995-96, and Piti Units 8 and 9, which were constructed in 1999, are existing compression ignition stationary reciprocating internal combustion engines as defined under the RICE NESHAP. Each unit is therefore an "affected source" under the RICE NESHAP. Each unit operates at an area source and was required to comply with the RICE NESHAP by no later than May 3, 2013. 40 C.F.R. § 63.6595(a)(1).

59. The deadline for completing the initial performance tests for the RICE NESHAP for Cabras Units 3 and 4 and Piti Units 8 and 9 was October 30, 2013, which is 180 days after the compliance date of May 3, 2013. 40 C.F.R. § 63.6612(a).

60. On March 27-28, 2013, MEC conducted an emissions test for Piti Units 8 and 9, which qualified as a substitute for an initial performance test under 40 C.F.R. § 63.6612(b). According to the emission test results, Piti Unit 8 emitted 36.9 ppm of CO at 15 percent $O_2$, which is approximately 60 percent over the emission limit of 23 ppm; Piti Unit 9 emitted 48.7 ppm of CO at 15 percent $O_2$, which is approximately 112 percent over the emission limit.

61. On October 9 and 11, 2012, GPA conducted an emissions test for Cabras Units 3 and 4, which qualified as a substitute for an initial performance test under 40 C.F.R.

8

§ 63.6612(b). According to the emission test results, Cabras Unit 3 emitted 89.5 ppm of CO at 15 percent $O_2$, which is approximately 289 percent over the emission limit of 23 ppm; Cabras Unit 4 emitted 104.1 ppm of CO at 15 percent $O_2$, which is approximately 353 percent over the emission limit.

62. Cabras Units 1 and 2, which were constructed in 1974-75, are existing oil-fired EGUs, as defined under the MATS. Each unit is therefore an "affected source" under the MATS. Each unit operates at an area source and was required to comply with the MATS by no later than April 16, 2015. 40 C.F.R. § 63.9984(b).

63. The deadline for completing the initial performance tests pursuant to the MATS for Cabras Units 1 and 2 was October 13, 2015, which is 180 days after the compliance date of April 16, 2015. 40 C.F.R. § 63.9984(b) and (f).

64. On January 19-21, 2011, GPA conducted an emissions test for HAPs on Cabras Unit 1. According to the emission test results, Cabras Unit 1 emitted filterable particulate matter and five HAP metals at rates that exceeded the emission limits for filterable particulate matter and individual HAP metals set out in 40 C.F.R. Part 63, Subpart UUUUU, Table 2, line 5.

65. On August 17, 2013, GPA conducted an emissions test for particulate matter on Cabras Unit 1. According to the emission test results, Cabras Unit 1 emitted 0.877 pounds ("lb") per megawatt/hour ("MWh") of particulate matter with high sulfur RFO and 0.806 lb/MWh with low sulfur RFO, which exceeded the emission limits of 0.3 lb/MWh for filterable particulate matter set out in 40 C.F.R. Part 63, Subpart UUUUU, Table 2, line 5.

66. Based on information and belief, GPA fueled Cabras Units 1 and 2 with RFO on each day the units operated on and after April 16, 2015. GPA did not switch to natural gas or distillate fuel oil (e.g., diesel oil) to fuel Cabras Units 1 and 2, and did not install an emission control device such as an electrostatic precipitator capable of 90 percent particulate control efficiency.

67. Based on information and belief, GPA has not conducted initial performance tests for Cabras Units 1 and 2, and has not submitted a Notification of Compliance Status to EPA, as required by the MATS.

9

## VII. FIRST CLAIM FOR RELIEF (RICE NESHAP)

68. The United States realleges and incorporates by reference Paragraphs 1 through 67, as if fully set forth herein.

69. Based on the initial performance test results, GPA operated Cabras Units 3 and 4 in violation of the emission limitations in 40 C.F.R. Part 63, Subpart ZZZZ, Table 2d, line 3, starting on May 3, 2013, and continuing on every day of operation that Cabras Units 3 and 4 were fueled with RFO between May 3, 2013 and August 31, 2015, when Cabras Units 3 and 4 were shut down due to an explosion and subsequent fire. GPA is also liable as the owner of Cabras Units 3 and 4.

70. Based on the initial performance test results, MEC operated and continues to operate Piti Units 8 and 9 in violation of the emission limitations in 40 C.F.R. Part 63, Subpart ZZZZ, Table 2d, line 3, starting on May 3, 2013, and continuing on every day of operation after May 3, 2013, that Piti Units 8 and 9 were or are fueled with RFO. MEC is also liable as the former owner of Piti Units 8 and 9. GPA is liable as the current owner of Piti Units 8 and 9.

71. Pursuant to Section 113(b) of the Act, permanent injunctive relief is appropriate to secure compliance with the Act on account of each of the above violations of the RICE NESHAP, and Defendants are liable for civil penalties for each day of each such violation.

## VIII. SECOND CLAIM FOR RELIEF (MATS)

72. The United States realleges and incorporates by reference Paragraphs 1 through 67, as if fully set forth herein.

73. Based on available emission test results, GPA operated and continues to operate Cabras Units 1 and 2 in violation of the emission limitations in 40 C.F.R. Part 63, Subpart UUUUU, Table 2, line 5, starting on April 16, 2015, and continuing on every day of operation after April 16, 2015, that Cabras Units 1 and 2 were or are fueled with RFO. GPA is also liable as the owner of Cabras Units 1 and 2.

74. GPA failed to conduct the initial performance test required by 40 C.F.R. §§ 63.9984(b) and (f), and 63.10011(a).

75.     GPA failed to submit a Notification of Compliance Status to EPA within 60 days after completion of the initial performance test in accordance with 40 C.F.R. §§ 63.9(h)(2)(ii) and 63.10030(e).

76.     Pursuant to Section 113(b) of the Act, permanent injunctive relief is appropriate to secure compliance with the Act on account of each of the above violations of the MATS NESHAP, and GPA is liable for civil penalties for each day of each such violation.

## IX.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the United States of America, respectfully requests that this Court:

1.      Order GPA to take all necessary steps to comply with the RICE NESHAP and the MATS NESHAP, and order MEC to take all necessary steps to comply with the RICE NESHAP;

2.      Assess civil penalties for each violation of the CAA and its implementing regulations as set forth in this Complaint in an amount up to $37,500 per day for each violation occurring after January 12, 2009 through November 2, 2015, and up to $99,681 per day for violations that occurred after November 2, 2015;

3.      Order Defendants to take other appropriate actions to remedy, mitigate, and offset the harm to public health and the environment caused by the violations of the CAA alleged above; and

4. Grant such other and further relief as the Court deems just and proper.

FOR THE UNITED STATES OF AMERICA:

2/6/20
Date

JEFFREY BOSSERT CLARK
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice


1/16/2020
Date

VALERIE K. MANN
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice


SHAWN N. ANDERSON
United States Attorney
Districts of Guam and NMI


1/16/2020
Date

/s/ Mikel W. Schwab
MIKEL W. SCHWAB
Assistant U.S. Attorney

JS 44 (Rev. 08/18)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
UNITED STATES OF AMERICA

**DEFENDANTS**
GUAM POWER AUTHORITY and MARIANAS ENERGY COMPANY, L.L.C.

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  Piti
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Valerie K. Mann, U.S. Department of Justice, P.O. Box 7611, Ben Franklin Station, Washington, DC 20044, 202-616-8756

Attorneys *(If Known)*
Graham Botha, General Counsel, Guam Power Authority, P.O. Box 2977, Hagatna GU 96932

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

[X] 1  U.S. Government Plaintiff
[ ] 2  U.S. Government Defendant
[ ] 3  Federal Question *(U.S. Government Not a Party)*
[ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | **LABOR** | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | **SOCIAL SECURITY** | [ ] 480 Consumer Credit |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | [ ] 861 HIA (1395ff) | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 862 Black Lung (923) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | | | [ ] 751 Family and Medical Leave Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 850 Securities/Commodities/ Exchange |
| | | | | [ ] 864 SSID Title XVI | [ ] 890 Other Statutory Actions |
| | | | | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | **FEDERAL TAX SUITS** | [X] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | [ ] 791 Employee Retirement Income Security Act | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 895 Freedom of Information Act |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 896 Arbitration |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | | |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | | |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

[X] 1 Original Proceeding
[ ] 2 Removed from State Court
[ ] 3 Remanded from Appellate Court
[ ] 4 Reinstated or Reopened
[ ] 5 Transferred from Another District *(specify)*
[ ] 6 Multidistrict Litigation - Transfer
[ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. §§ 7401-7671q of the Clean Air Act

Brief description of cause:
Injunctive Relief and Civil Penalties for violations of the Clean Air Act

## VII. REQUESTED IN COMPLAINT:

[ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  [ ] Yes  [X] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE                                DOCKET NUMBER

DATE
02/05/2020

SIGNATURE OF ATTORNEY OF RECORD
/s/ Valerie K. Mann

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE