VALERIE K. MANN
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Telephone: 202-616-8756

SHAWN N. ANDERSON
United States Attorney
Districts of Guam and the NMI
MIKEL W. SCHWAB
Assistant United States Attorney
Suite 500, Sirena Plaza
108 Hernan Cortez
Hagåtña, Guam 96910
Telephone: 671-472-7332

Attorneys for Plaintiff United States of America

UNITED STATES DISTRICT COURT
FOR THE TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, | )<br>) |
| Plaintiff, | ) No. 1:20-cv-00007<br>) |
| v. | )<br>) MEMORANDUM IN SUPPORT |
| GUAM POWER AUTHORITY and<br>MARIANAS ENERGY COMPANY, L.L.C., | ) OF UNOPPOSED<br>) MOTION TO ENTER<br>) CONSENT DECREE |
| Defendants. | )<br>) |

# MEMORANDUM IN SUPPORT OF UNITED STATES' UNOPPOSED MOTION TO ENTER CONSENT DECREE

Plaintiff, the United States, on behalf of the United States Environmental Protection Agency (U.S. EPA), respectfully moves this Court to approve and enter the proposed Consent Decree ("Decree") lodged in this case on February 6, 2020, by signing it at the Court's signature block on page 30. *Decree at Doc. 2-1*. The United States concurrently filed a Complaint and lodged the proposed Decree with this Court seeking injunctive relief and civil penalties for alleged violations of the Clean Air Act, 42 U.S.C. § 7412, with regard to Guam Power Authority's (GPA) Cabras and Piti Power Plants in Piti, Guam. The Decree before this Court would resolve the Plaintiff's claims stated in the Complaint. The Decree provides injunctive relief to bring the power plants into compliance, and for GPA to pay a civil penalty of $400,000.

In accordance with the Decree and 28 C.F.R. § 50.7, notice of the proposed Decree was published in the Federal Register at 85 Fed. Reg. 8019 (Feb. 12, 2020), and the Decree was lodged with this Court for at least 30 days for public comment. *Decree ¶ 103*. The United States received no public comments. Defendants have consented to entry of this Decree without further notice and agree not to withdraw from or oppose entry of this Decree by the Court or to challenge any provision of the Decree. *Id.*

As described below, the Decree is fair, reasonable, and consistent with the Clean Air Act. No person has raised any reason not to proceed with the settlement. Therefore, the United States respectfully moves this Court to sign and enter the proposed Decree as a final judgment.

## I. BACKGROUND

### A. Summary of Allegations in Complaint

GPA, a public corporation created by the Government of Guam, is the current owner of both the Cabras and Piti Power Plants, and the operator of the Cabras Power Plant. *Compl. at Doc. 1 ¶¶ 7, 9, 15*. Marianas Energy Company, L.L.C. (MEC) is the operator and the former owner of the Piti Power Plant. *Compl. ¶¶ 12, 13*.

The case involves the National Emission Standards for Hazardous Air Pollutants (NESHAP) in the Clean Air Act, and in particular, (a) the NESHAP for Stationary Reciprocating

1

Internal Combustion Engines, 40 C.F.R. Part 63, Subpart ZZZZ (RICE NESHAP), which had an effective date of May 3, 2013, and (b) the NESHAP for coal- and oil-fired electric utility steam generating units, 40 C.F.R. Part 63, Subpart UUUUU (also known as the Mercury and Air Toxics Standard or MATS) which had an effective date of April 16, 2015.

This case involves six units which were fueled with #6 heavy fuel oil, which is also known as residual fuel oil (RFO). Two units at Cabras were shut down in 2015 after an explosion and subsequent fire. *Compl. ¶ 69.* The remaining two units at Cabras had been constructed in 1974-75. *Compl ¶ 49.* The Piti units had been constructed in 1999. *Compl. ¶ 51.*

The Complaint alleges the following claims:

(1) since May 3, 2013, GPA violated the emission limits for hazardous air pollutants (HAPs) established by the RICE NESHAP (with emissions of carbon monoxide established as the enforceable surrogate for emissions of HAPs) at the Cabras Power Plant. *Compl. ¶¶ 35, 61, 69.*;

(2) since May 3, 2013, GPA and MEC violated the emission limits for HAPs established by the RICE NESHAP (with emissions of carbon monoxide established as the enforceable surrogate for emissions of HAPs) at the Piti Power Plant. *Compl. ¶¶ 35, 60, 70.;*

(3) since April 16, 2015, GPA violated the emission limits for HAPs established by the MATS at the Cabras Power Plant. *Compl. ¶¶ 64, 65, 66, 73.*; and

(4) GPA failed to conduct a performance test and failed to submit a notification of compliance status as required in 2015 by the MATS at the Cabras Power Plant. *Compl. ¶¶ 67, 74, 75.*

**B. Summary of the Terms of Proposed Consent Decree**

*Resolution of Claims*. If entered by the Court, the Consent Decree will resolve the claims brought in the Complaint filed in this action with regard to the Cabras and Piti Power Plants in Piti, Guam. *Decree ¶ 83.*

*Schedule for Compliance.* The Consent Decree establishes a schedule for GPA to bring the Piti Power Plant into compliance by December 31, 2021, and the Cabras Power Plant into

2

compliance by October 31, 2022. *Decree ¶¶ 22, 28.* The Decree provides for interim milestones for compliance requirements. *Decree Section VI.*

The two units at the Piti Power Plant are to be brought into compliance with the RICE NESHAP by a fuel switch from RFO to ultra-low sulfur diesel (ULSD) and the installation of oxidation catalysts. *Decree ¶¶ 20-22.* These oxidation catalysts are intended to reduce emissions of HAPs and carbon monoxide, the enforceable surrogate for emissions of HAPs. *Decree ¶ 8.b.* GPA is to construct new pipelines and to refurbish the fuel storage tanks at its Peterra tank farm in order to accommodate both a fuel switch to ULSD at the Piti Power Plant and construction of a new power plant to replace the Cabras Power Plant's generating capacity. *Decree ¶¶ 9, 12-19, 26.* Completion and commissioning of this new power plant is required to occur no later than October 31, 2022, and at that time GPA will shut down the two remaining units operating at the Cabras Power Plant. *Decree ¶¶ 28, 32.* Once GPA begins to refurbish a main tank at the Peterra tank farm to handle ULSD, only low sulfur residual fuel oil can be used as a fuel to power Cabras Units 1 and 2. *Decree ¶ 29.*

The Decree provides for requirements and interim milestones for the construction of a new power plant. GPA must enter into a contract to construct and operate 180 megawatts (MW) of new generation utilizing ULSD, at least initially, but capable of burning natural gas. *Decree ¶ 26.* The contract shall provide that startup and shakedown of the new power plant must commence no later than October 1, 2022. *Id.* The schedule for on-site construction activities for the new power plant includes: (1) a complete engineering report for the entire project shall be completed by January 31, 2021; (2) all concrete foundations and pads shall be poured and completed by July 31, 2021; and (3) installation of the new generating units shall commence by April 1, 2022. *Decree ¶ 27.*

*Mitigation of Past Emissions*. GPA will conduct additional injunctive relief in mitigation of excess past and ongoing emissions of HAPs from the Cabras and Piti Power Plants. GPA is to award a contract for at least 100 MW of solar power, with construction to be completed by December 31, 2021. *Decree ¶ 42.* GPA is to complete installation and operation of a 40 MW energy storage system within 30 days of the effective date of the Decree. *Decree ¶ 43.* The

3

energy storage system shall consist of: (1) a renewable integration system at the Talofofo Substation with an instantaneous delivery capacity of 16 MW and a storage capacity of 16 MW hours; and (2) a frequency regulating system at the Agana Substation with an instantaneous delivery capacity of 24 MW and a storage capacity of 6 MW hours. *Id.* Use of these renewable energy and storage systems will supplant energy that would otherwise have been generated by the combustion of fossil fuels at electric generating units and thereby eliminate the emissions of HAPs resulting from those combustion activities.

*Civil Penalty.* The United States reviewed GPA's financial information and determined that GPA has a limited ability to pay a civil penalty in this matter. *Decree p.2 and ¶ 9.* In light of that, the Decree requires GPA to pay a civil penalty of $400,000, plus interest from the date the Decree was lodged. *Decree ¶ 10.*

*Ministerial Provisions.* GPA will provide semi-annual reports detailing its compliance status, completion milestones, and any problems that may delay compliance. *Decree ¶ 46.* The Decree provides that GPA shall be liable for stipulated penalties to the United States for violations of this Consent Decree, unless excused under Section XI (Force Majeure). *Decree ¶ 53.* The Decree has a standard force majeure provision if any event arises from causes beyond the control of Defendants that delays or prevents the performance of any obligation under this Consent Decree. *Decree Section XI.*[1]

**II.      ARGUMENT**

**A. Legal Standard for Judicial Approval of a Proposed Consent Decree**

In reviewing a consent decree, a court must evaluate whether the agreement is "fundamentally fair, adequate and reasonable . . . [and] conform[s] to applicable laws." *United States v. Oregon*, 913 F.2d 576, 580 (9th Cir. 1990). *See also United States v. Wis. Elec. Power Co.*, 522 F. Supp. 2d 1107, 1121 (E.D. Wis. 2007) (entering and approving a Clean Air Act settlement with an electric utility because it was reasonable, fair, and consistent with the policies

---

[1] Defendants have the ability to invoke the *Force Majeure* provisions of the Decree to be excused from liability for stipulated penalties – if warranted by the specific facts – including for delays due to restrictions arising from the COVID-19 pandemic.

4

underlying the Clean Air Act). A court does not have to assure that the decree "impose[s] all the obligations authorized by law," but rather the court confirms that the "decree represents a reasonable factual and legal determination." *Id.* at 580-81 (citation omitted). A court's approval of a consent decree requires some degree of "delicate balancing, gross approximations and rough justice." *United States v. Chevron U.S.A., Inc.*, 380 F. Supp.2d 1104, 1111 (N.D. Cal. 2005). The review of a proposed consent decree should be shielded from "second-guessing the Executive" and instead be defined by deference to the "EPA's expertise" and an agency's construction of the statute it administers. *United States v. Coeur d'Alenes Co.*, 767 F.3d 873, 876 (9th Cir. 2014).

A court does not have the authority to modify the decree. Instead, it must either accept or reject the decree as submitted. *See Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 630 (9th Cir. 1982).

The court measures the fairness of a consent decree by weighing the procedural process used to reach an agreement and the substantive fairness of its content. *Coeur d'Alenes*, 767 F.3d at 876; *see also United States v. Pacific Gas & Electric*, 776 F.Supp.2d 1007, 1024 (N.D. Cal. 2011). A procedural process where "many affected parties, themselves knowledgeable and represented by experienced lawyers, have hammered out an agreement at arm's length and advocate its embodiment in a judicial decree" should be afforded deference. *United States v. Cannons Engineering Corp.*, 899 F.2d. 79, 84 (1st Cir. 1990).

The court may engage in a cost-benefit weighing of the proposed consent decree to assess the substantive fairness of the settlement. *Chevron*, 380 F.Supp.2d at 1113-14. The consent decree's pollution reduction may be compared to the best-case trial scenario had the government succeeded on all claims, while also factoring in the costs related to litigation and time spent in trial. *Id.* This analysis assists a court in determining whether a consent decree adequately accounts for the parties' alleged environmental damage; however, it is reasonable to expect that a consent decree will ultimately "fall short of the best-case scenario" because settlement inherently involves compromise. *Id.*

5

As for the applicable law to which the Court is to look, the relevant law in this matter is the Clean Air Act, which establishes the relevant regulatory program which is designed to protect and enhance the quality of the nation's air resources so as to promote the public health and welfare. 42 U.S.C. § 7401(b)(1).

In sum, the Court's role in reviewing this Decree is limited. Broad deference should be afforded to EPA's expertise in determining an appropriate settlement and to the voluntary agreement of the parties in proposing the settlement. If the Decree is fair, reasonable, and consistent with applicable law, it ought to be approved.

### 1. The Proposed Consent Decree is Procedurally Fair

The Decree is procedurally fair because the parties reached the agreement after negotiation at arm's length by experienced attorneys. All parties had competent counsel. Attorneys from the Department of Justice's Environmental Enforcement Section of the Environment and Natural Resource Division, along with U.S. EPA counsel, negotiated on behalf of the United States. Thus, the Decree was the culmination of a negotiation process executed by skilled lawyers that produced an agreement created by good faith, arm's length negotiations.

After the Decree was lodged with the Court, notice of the Decree was published in the Federal Register. The notice informed the public that the Decree was available to the public during the 30-day public comment period, which ran from February 12, 2020 through March 13, 2020. 85 Fed. Reg. 8019 (Feb. 12, 2020). The public has had its due opportunity to comment, and no member of the public disputed that this Decree is procedurally fair.

### 2. The Proposed Consent Decree is Substantively Fair, Reasonable, and Conforms with Applicable Law

The Decree is a fair and reasonable solution that avoids protracted litigation while adequately accounting for Defendants' alleged noncompliance with environmental regulations. In light of public policy favoring settlement, *Chevron*, 380 F.Supp.2d at 1111, this agreement avoids protracted, costly litigation. The Decree puts Defendants on a schedule to reach compliance with the regulations that the complaint alleges the Defendants violated. One of the explicit objectives of the Decree is to establish a compliance schedule that allows for adequate

6

time to accomplish the Decree's compliance objectives while not disrupting electric service on Guam. *Decree ¶ 8.* Compliance requirements include switching fuels, adding pipelines, refurbishing tanks, and constructing an entirely new power plant, all within 2 ½ years. Such a schedule is reasonable given the complex and sometimes sequential construction activities required under the Decree.

It is in the public interest to retire the old Cabras units and replace them with a new reliable – and less polluting – power source, and to bring the Piti units into compliance. Furthermore, the Decree mitigates alleged environmental harms committed by Defendants with the additional injunctive relief requiring GPA to construct 100 MW of solar power and a 40 MW energy storage system.

The Decree includes a civil penalty of $400,000 to the United States. This civil penalty, combined with stipulated penalties for violating the Decree, acts as a deterrent to future violations. On the other hand, the penalty is rationally related to GPA's limited ability to pay.

Taken together, the provisions of the Decree amount to a fair, just, and reasonable agreement which is in the public interest and consistent with the Clean Air Act.

## CONCLUSION

The Decree now before the Court was reached after the parties' careful and informed assessment of the merits of the case, the costs, risks, and delays that litigation would entail, and the value of an early settlement, including the significant environmental benefits that will accrue from the commencement of the injunctive relief. As explained above, the proposed settlement is fair, reasonable, and consistent with the purpose of the Clean Air Act. The United States, on behalf of the U.S. EPA, respectfully moves this Court to approve and enter the proposed Decree lodged in this case on February 6, 2020, by signing it at the Court's signature block on page 30.

Dated: April 16, 2020 EST                    Respectfully submitted,


    /s/ Valerie K. Mann
VALERIE K. MANN
Environmental Enforcement Section

7

Environment and Natural Resources Division
U.S. Department of Justice

SHAWN N. ANDERSON
United States Attorney
Districts of Guam and NMI

/s/ Mikel W. Schwab
MIKEL W. SCHWAB
Assistant U.S. Attorney

OF COUNSEL:

ALLAN ZABEL
Senior Counsel, Air & Toxics Section II
Office of Regional Counsel
U.S. Environmental Protection Agency, Region IX

**CERTIFICATE OF SERVICE**

I hereby certify that on April 16, 2020 EST, I electronically filed a copy of this Memorandum in Support of Unopposed Motion to Enter Consent Decree with the Clerk of Court using the CM/ECF system.

/s/ Valerie K. Mann
VALERIE K. MANN
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice