JEFFREY BOSSERT CLARK
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice
Washington, D.C. 20530

VALERIE K. MANN
Environmental Enforcement Section
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Telephone: 202-616-8756

SHAWN N. ANDERSON
United States Attorney
Districts of Guam and the NMI
MIKEL W. SCHWAB
Assistant United States Attorney
Suite 500, Sirena Plaza
108 Hernan Cortez
Hagåtña, Guam 96910
Telephone: 671-472-7332

Attorneys for Plaintiff United States of America

# UNITED STATES DISTRICT COURT
## FOR THE TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>       v.<br><br>GUAM POWER AUTHORITY and<br>MARIANAS ENERGY COMPANY, L.L.C.,<br><br>Defendants. | Case No. 1:20-cv-00007<br><br>CONSENT DECREE |

# TABLE OF CONTENTS

I.     JURISDICTION AND VENUE ................................................................2

II.    APPLICABILITY ................................................................................3

III.   OBJECTIVES ....................................................................................4

IV.   DEFINITIONS ...................................................................................4

V.    CIVIL PENALTY ...............................................................................6

VI.   COMPLIANCE REQUIREMENTS ....................................................7

     A.    Fuel Delivery System .............................................................7

     B.    Piti Units 8 and 9 ...................................................................9

     C.    New Power Plant ..................................................................10

     D.    Cabras Units 1 and 2 ............................................................10

     E.    Cabras Units 3 and 4 ............................................................11

     F.    Tanguisson Units 1 and 2 .....................................................11

     G.   Review and Approval of Deliverables ..................................11

     H.    Permits ................................................................................12

     I.     Applicable Implementation Plan ..........................................12

VII.  ADDITIONAL INJUNCTIVE RELIEF .............................................13

VIII. PROHIBITION ON NETTING CREDITS OR OFFSETS ..................13

IX.   REPORTING REQUIREMENTS ......................................................14

X.    STIPULATED PENALTIES ..............................................................15

XI.   FORCE MAJEURE .........................................................................19

XII.  DISPUTE RESOLUTION ................................................................21

XIII. INFORMATION COLLECTION AND RETENTION ......................23

XIV. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS .............25

XV.  COSTS ..........................................................................................26

XVI. NOTICES .......................................................................................26

XVII. EFFECTIVE DATE ........................................................................27

XVIII. RETENTION OF JURISDICTION ..................................................27

XIX. MODIFICATION ............................................................................27

XX.  TERMINATION ..............................................................................28

XXI. PUBLIC PARTICIPATION .............................................................29

XXII. SIGNATORIES/SERVICE ..............................................................29

XXIII. INTEGRATION .............................................................................30

XXIV. FINAL JUDGMENT ......................................................................30

i

WHEREAS, Plaintiff United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), has filed a complaint in this action concurrently with the lodging of this Consent Decree, alleging that Defendants Guam Power Authority ("GPA") and Marianas Energy Company, L.L.C. ("MEC") (collectively the "Defendants") have violated and are violating Section 112 of the Clean Air Act ("Act"), 42 U.S.C. § 7412, and the regulations promulgated under that Section;

WHEREAS, the Complaint alleges claims relating to the National Emission Standards for Hazardous Air Pollutants ("NESHAP") for Coal- and Oil-Fired Electric Utility Steam Generating Units, referred to as the Mercury and Air Toxics Standards ("MATS"), set forth at 40 C.F.R. Part 63, subpart UUUUU, at the Cabras Power Plant, and the NESHAP for Stationary Reciprocating Internal Combustion Engines, set forth at 40 C.F.R. Part 63, subpart ZZZZ ("RICE NESHAP"), at the Cabras Power Plant and the Piti Power Plant;

WHEREAS, the Complaint alleges that GPA has operated and continues to operate its two baseload electric generating units known as Cabras Units 1 and 2 in violation of the MATS since the MATS' effective date of April 16, 2015;

WHEREAS, the Complaint also alleges that GPA has operated its two baseload electric generating units known as Cabras Units 3 and 4 in violation of the RICE NESHAP since the RICE NESHAP's effective date of May 3, 2013, until Units 3 and 4 were damaged in an explosion at the Cabras Power Plant on August 31, 2015;

WHEREAS, the Complaint further alleges that MEC has operated and continues to operate its two baseload electric generating units known as Piti Units 8 and 9 in violation of the RICE NESHAP since the RICE NESHAP's effective date of May 3, 2013;

WHEREAS, MEC operated Piti Units 8 and 9 pursuant to a contract that ceded ownership of Piti Units 8 and 9 back to GPA on or around January 29, 2019; and required GPA to supply and deliver all fuel used by Piti Units 8 and 9 to produce electric power;

WHEREAS, Cabras Units 1 and 2 are powered by boilers that have been fueled with Residual Fuel Oil; Cabras Units 3 and 4 were powered before the August 31, 2015 explosion by slow-speed diesel engines that were fueled with Residual Fuel Oil; and Piti Units 8 and 9

1

are powered by slow-speed diesel engines that have been fueled with Residual Fuel Oil;

WHEREAS, GPA plans to build a new power plant, with up to 180 megawatts in generating capacity, which will initially be fueled by Ultra-Low Sulfur Diesel ("ULSD");

WHEREAS, the United States reviewed Financial Information and determined GPA has a limited ability to pay a civil penalty in this matter;

WHEREAS, Defendants do not admit any liability to the United States arising out of the transactions or occurrences alleged in the Complaint;

WHEREAS, the Parties have agreed to resolve the United States' claims arising out of the transactions or occurrences alleged in the Complaint by entering into this Consent Decree;

WHEREAS, the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation among the Parties, and that this Consent Decree is fair, reasonable, and in the public interest;

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I.     JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 113(b) of the Act, 42 U.S.C. § 7413(b), and over the Parties.  Venue lies in this District pursuant to 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b) and (c) and 1395(a), because the violations alleged in the Complaint are alleged to have occurred in, and Defendants conduct business in, this judicial district.  For purposes of this Decree, or any action to enforce this Decree, Defendants consent to the Court's jurisdiction over this Decree and any such action and over Defendants and consent to venue in this judicial district.

2.      For purposes of this Consent Decree, Defendants agree that the Complaint states claims upon which relief may be granted pursuant to 42 U.S.C. § 7413(b).

2

## II.     APPLICABILITY

3.     The obligations of this Consent Decree apply to and are binding upon the United States, and upon Defendants and any successors, assigns, or other entities or persons otherwise bound by law.

4.     At least 60 Days prior to any transfer of ownership or operation of any Facility, the Defendant who owns or operates that Facility shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to EPA and the United States in accordance with Section XVI (Notices).  No transfer of ownership or operation of any Facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendant of its obligation to ensure that the terms of the Decree are implemented, unless:  (1) the transferee agrees to undertake the obligations required by this Decree and to be substituted for the Defendant as a Party under the Decree and thus be bound by the terms thereof; and (2) the United States consents in writing to relieve that Defendant of its obligations for that Facility.  Any attempt to transfer ownership or operation of the Facility without complying with this Paragraph constitutes a violation of this Decree.

5.     The requirements of Paragraph 4 do not apply to the transfer of ownership of Piti Units 8 and 9 from MEC to GPA that occurred pursuant to contract between MEC and GPA in January 2019.  By entering into this Consent Decree, GPA agrees to accept all obligations applicable to Piti Units 8 and 9 created by this Consent Decree.  By entering into this Consent Decree, MEC agrees to continuing responsibility for all obligations applicable to Piti Units 8 and 9 if MEC continues to have any operational role over those Units subsequent to the transfer of MEC's ownership interest in Piti Units 8 and 9 to GPA in January 2019.  Any other transfer of ownership or operation of any Facility shall be subject to the requirements of Paragraph 4.

6.     Defendants shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree, as well as to any contractor retained to perform work required under this

3

Consent Decree. Defendants shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

7. In any action to enforce this Consent Decree, Defendants shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

## III. OBJECTIVES

8. The objectives of this Consent Decree are to:

    a. permanently Retire Cabras Units 1 and 2;

    b. bring Piti Units 8 and 9 into compliance with the RICE NESHAP by switching from Residual Fuel Oil to ULSD and installing oxidation catalysts;

    c. permanently Retire Cabras Units 3 and 4;

    d. construct a new power plant that will comply with the requirements of the Clean Air Act; and

    e. establish a compliance schedule in Section VI (Compliance Requirements) of this Consent Decree that allows for adequate time to accomplish these objectives while not disrupting electric service on Guam.

## IV. DEFINITIONS

9. Terms used in this Consent Decree that are defined in the Act or in regulations promulgated pursuant to the Act shall have the meanings assigned to them in the Act or such regulations, unless otherwise provided in this Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

"Cabras Power Plant" shall mean, collectively, Cabras Units 1 and 2, both of which are steam turbine electricity generating units with each unit having 66 megawatts ("MW") of capacity, and Cabras 3 and 4, both of which are slow-speed diesel electricity generating units with each unit having 40 MW of capacity, all of which are located on Cabras Island, Municipality of Piti, on Guam.

"Complaint" shall mean the complaint filed by the United States in this action.

"Consent Decree" or "Decree" shall mean this Decree.

4

"Day" shall mean a calendar day unless expressly stated to be a business day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day.

"Defendants" shall mean Guam Power Authority ("GPA") and Marianas Energy Company, L.L.C. ("MEC").

"Deliverable" shall mean any written document required to be prepared and/or submitted by or on behalf of a Defendant pursuant to this Consent Decree.

"EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies.

"Effective Date" shall have the definition provided in Section XVII.

"Facilities" shall mean the Cabras Power Plant and the Piti Power Plant, each of which shall also be referred to as a "Facility."

"Financial Information" shall mean balance sheets, tax returns, financial statements, cash flow statements, projections, and all other financial information that GPA made available to the United States prior to the date of lodging of this Consent Decree.

"Fuel Delivery System" shall mean all piping, pumps, tanks, valves, and control equipment in GPA's system for delivery and storage of fuel from the Navy tie-in in the Apra Harbor to tanks and associated equipment at the facility known as the "Peterra Tank Farm," and from the Peterra Tank Farm to and including the day fuel storage tanks at the Cabras Power Plant and the Piti Power Plant.

"Low Sulfur Residual Fuel Oil" shall mean Residual Fuel Oil that has a sulfur content of less than 1.19 percent by weight.

"MATS" shall mean the NESHAP for Coal- and Oil-Fired Electric Utility Steam Generating Units, referred to as the Mercury and Air Toxics Standards, set forth at 40 C.F.R. Part 63, subpart UUUUU.

"Paragraph" shall mean a portion of this Decree identified by an Arabic numeral.

"Parties" shall mean the United States and Defendants.

5

"Piti Power Plant" shall mean, collectively, Piti Units 8 and 9, both of which are slow-speed diesel electricity generating units with each unit having 44 MW of capacity, and are located in the Municipality of Piti on Guam.

"Residual Fuel Oil" or "RFO" shall mean a general classification for heavier oils that remain after distillate fuel oils and lighter hydrocarbons are distilled away in refinery operations. Residual Fuel Oil is used for the production of electric power, space heating, vessel bunkering, and various industrial processes.

"Retire" or "Retired" shall mean to permanently shut down a Unit such that the Unit cannot physically operate by removing the fuel injectors from any Unit subject to the RICE NESHAP or removing the burner oil guns from any Unit subject to the MATS, and to comply with applicable Guam and federal requirements for permanently ceasing operation of the Unit, including removing the Unit from Guam's air emissions inventory, and amending all applicable permits so as to reflect the permanent shutdown status of such Unit.

"RICE NESHAP" shall mean the NESHAP for Stationary Reciprocating Internal Combustion Engines, set forth at 40 C.F.R. Part 63, subpart ZZZZ.

"Section" shall mean a portion of this Decree identified by a Roman numeral.

"Ultra-Low Sulfur Diesel" or "ULSD" shall mean diesel with no greater than 15 parts per million of sulfur as determined using ASTM D2622.

"Unit" shall mean one of the electric generating units that are part of the Facilities.

"United States" shall mean the United States of America, acting on behalf of EPA.

## V. CIVIL PENALTY

10. Within 30 Days after the Effective Date of this Consent Decree, GPA shall pay the sum of $400,000 as a civil penalty, together with interest accruing from the date on which the Consent Decree is lodged with the Court, at the rate specified in 28 U.S.C. § 1961 as of the date of lodging.

11. GPA shall pay the civil penalty due by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice account, in accordance with instructions provided to GPA by the Financial Litigation Unit ("FLU") of the United States Attorney's Office for the

6

District of Guam after the Effective Date of this Consent Decree. The payment instructions provided by the FLU will include a Consolidated Debt Collection System ("CDCS") number, which GPA shall use to identify all payments required to be made in accordance with this Consent Decree. The FLU will provide the payment instructions to:

> John J. Kim
> Chief Financial Officer
> Guam Power Authority
> P.O. Box 2977
> Hagatna, GU 96932
> 671-648-3120
> jjekim@gpagwa.com

on behalf of GPA. GPA may change the individual to receive payment instructions on its behalf by providing written notice of such change to the United States and EPA in accordance with Section XVI (Notices).

At the time of payment, GPA shall send notice that payment has been made: (i) to EPA via email at cinwd_acctsreceivable@epa.gov or via regular mail at EPA Cincinnati Finance Office, 26 W. Martin Luther King Drive, Cincinnati, Ohio 45268; (ii) to the United States via email or regular mail in accordance with Section XVI (Notices); and (iii) to EPA in accordance with Section XVI (Notices). Such notice shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in <u>United States v. Guam Power Authority, et al.</u>, and shall reference the civil action number, CDCS Number, and DOJ case number 90-5-2-1-11000.

## VI. COMPLIANCE REQUIREMENTS

A. <u>Fuel Delivery System</u>

12. Within 60 Days after the Effective Date of this Consent Decree, GPA shall submit a schedule for completion of the Fuel Delivery System inspections described in Paragraph 13.

13. Within 180 Days after the Effective Date of this Consent Decree, GPA shall inspect the entire Fuel Delivery System. These inspections shall include, but not necessarily be limited to, all piping, pumps, tanks, valves, and control equipment in the Fuel Delivery System, and shall be conducted to determine: (a) the overall condition of the existing Fuel Delivery System; and (b) the nature and extent of any modification, repairs, rehabilitation or

7

replacements necessary for the Fuel Delivery System to deliver ULSD to the Facilities. The inspection of piping shall be consistent with American Petroleum Institute Standard API 570, "Piping Inspection Code: In-service Inspection, Rating, Repair, and Alteration of Piping Systems." The inspection of tanks shall be consistent with Steel Tank Institute "SP001 Standard for the Inspection of Aboveground Storage Tanks, 6th Edition." The inspection of the entire Fuel Delivery System shall be done under the supervision of a licensed professional engineer.

14. Within 60 Days after completion of the inspections described in Paragraph 13, GPA shall submit an Inspection Report to EPA summarizing the findings, conclusions, and recommendations related to the Fuel Delivery System inspections. The Inspection Report shall be prepared and certified by a licensed professional engineer.

15. Within 60 Days after submission of the Inspection Report described in Paragraph 14, GPA shall submit a proposed Construction Report to EPA for review and approval.

16. The Construction Report shall include a determination of specific modifications, or repairs, rehabilitation or replacements that are needed for the existing Fuel Delivery System, based on the findings, conclusions, and recommendation of the Inspection Report. Such specific modifications, repairs, or replacements shall include, at a minimum, the construction of new pipelines to convey ULSD from the Navy tie-in at Apra Harbor, through one of the two main tanks (designated as #1934 and #1935) at the Peterra Tank Farm, to Piti Units 8 and 9, and refurbishment of the tank used to store and convey ULSD to Piti Units 8 and 9. GPA shall also include in the Construction Report: (1) a plan to complete all modifications, repairs, rehabilitation, replacements, or new construction that are needed for the existing Fuel Delivery System to deliver ULSD to Piti Units 8 and 9; and (2) a proposed schedule for installing the new ULSD pipelines that meets the deadlines set forth in Paragraphs 17 and 18 below.

17. Within 60 Days of EPA's approval of the Construction Report, GPA shall enter into a binding contract for construction of the new ULSD pipelines described in Paragraph 16.

18. By May 1, 2021, construction of the new ULSD pipelines described in

8

Paragraph 16 shall be completed.

19.     By January 1, 2021, GPA shall enter a binding contract for the purchase and delivery of ULSD to Guam.

B.     Piti Units 8 and 9

20.     By March 1, 2020, for Piti Units 8 and 9, GPA shall submit complete applications for all permits and approvals necessary to:  (1) accomplish the fuel switch to ULSD; and (2) install oxidation catalysts.

21.     By July 1, 2020, GPA shall enter into a binding contract for performance of all work necessary to accomplish the fuel switch to ULSD and to install oxidation catalysts at Piti Units 8 and 9.

22.     By December 31, 2021, and continuing thereafter, GPA shall:  (1) complete the installation of oxidation catalysts at Piti Units 8 and 9; (2) use only ULSD as a fuel to power Piti Units 8 and 9; and (3) otherwise comply with all requirements of the RICE NESHAP at those Units.

23.     Beginning December 31, 2021, and continuing thereafter, GPA shall test the sulfur content of all fuels used at Piti Units 8 and 9.  GPA shall arrange for such tests by sampling and analyzing each shipment of fuel to be used at these Units, both before it leaves its location of origin (e.g., Singapore) and after it arrives at the Apra Harbor unloading dock on Guam.  GPA shall use the test methods contained in ASTM D2880 in ascertaining the sulfur content of these fuels, and shall maintain records of the fuel sulfur content as part of the recordkeeping obligations established in Paragraphs 24 and 25.

24.     By December 31, 2021, and continuing thereafter, as long as MEC operates Piti Units 8 and 9 and the requirements of Paragraph 22 have not yet been met, MEC shall create and maintain for at least five years, in a form suitable for inspections, a daily record showing the amount(s) (e.g., gallons) and type(s) of fuel (e.g., ULSD or RFO) used to power Piti Units 8 and 9.

25.     By December 31, 2021, and continuing thereafter, if at any time GPA operates, directly or through a third party, Piti Units 8 and 9, and the requirements of Paragraph 22 have

9

not yet been met, GPA shall create and maintain for at least five years, in a form suitable for inspections, a daily record showing the amount(s) (e.g., gallons) and type(s) of fuel (e.g., ULSD or RFO) used to power Piti Units 8 and 9.

C.    <u>New Power Plant</u>

26.    Within 30 Days of the Effective Date, GPA shall enter into a contract to construct and operate 180 MW of new generation utilizing ULSD, at least initially, but capable of burning natural gas. The contract shall provide that startup and shakedown of the new power plant must commence no later than October 1, 2022.

27.    On-site construction activities for the new power plant described in Paragraph 26 shall meet the following interim milestones: (1) all concrete foundations and pads shall be poured and completed by July 31, 2021; (2) a complete engineering report for the entire project shall be completed by January 31, 2021; and (3) installation of the new generating units shall commence by April 1, 2022.

28.    By October 31, 2022, GPA shall operate 180 MW of new generation utilizing only ULSD, at least initially, but capable of burning natural gas.

D.    <u>Cabras Units 1 and 2</u>

29.    At the time one of the two main tanks at the Peterra Tank Farm is removed from service so that it can be refurbished to handle ULSD, GPA shall submit a notification to EPA setting forth the identification of the tank removed from service (#1934 or #1935) and the date it was emptied and removed from service ("Tank Refurbishment Date"). Beginning no later than the Tank Refurbishment Date and continuing thereafter, GPA shall use only Low Sulfur Residual Fuel Oil as a fuel to power Cabras Units 1 and 2.

30.    Beginning on the Tank Refurbishment Date and continuing thereafter until GPA, or a third party on behalf of GPA, no longer operates Cabras Units 1 and 2, GPA shall test the sulfur content of all fuels used at Cabras Units 1 and 2. GPA shall arrange for such tests by sampling and analyzing each shipment of fuel to be used at these Units, both before it leaves its location of origin (e.g., Singapore) and after it arrives at the Apra Harbor unloading dock on Guam. GPA shall use the test methods contained in ASTM D2880 in ascertaining the

sulfur content of these fuels, and shall maintain records of the fuel sulfur content as part of the recordkeeping obligations established in Paragraph 31.

31.     Beginning on the Tank Refurbishment Date and continuing thereafter until GPA, or a third party on behalf of GPA, no longer operates Cabras Units 1 and 2, GPA shall create and maintain for at least five years, in a form suitable for inspections, a daily record showing the amount(s) (e.g., gallons) and type(s) of fuel (e.g., Low Sulfur Residual Fuel Oil or RFO) used to power Cabras Units 1 and 2.

32.     By October 31, 2022, GPA shall permanently Retire Cabras Units 1 and 2.

E.     Cabras Units 3 and 4

33.     Within 30 Days after the Effective Date of this Consent Decree, GPA shall permanently Retire Cabras Units 3 and 4.

F.     Tanguisson Units 1 and 2

34.     Within 30 Days after the Effective Date of this Consent Decree, GPA shall permanently Retire Tanguisson Units 1 and 2.

G.     Review and Approval of Deliverables

35.     After review of Deliverables required to be submitted by GPA pursuant to this Section VI (Compliance Requirements), EPA shall in writing:  (a) approve the submission; (b) approve the submission upon specified conditions; (c) approve part of the submission and disapprove the remainder; or (d) disapprove the submission.

36.     If the submission is approved pursuant to Paragraph 35, GPA shall take all actions required by the plan, report, or other document, in accordance with the schedules and requirements of the plan, report, or other document, as approved.  If the submission is conditionally approved or approved only in part pursuant to Paragraph 35(b) or (c), GPA shall, upon written direction from EPA, take all actions required by the approved plan, report, or other item that EPA determines are technically severable from any disapproved portions, subject to GPA's right to dispute only the specified conditions or the disapproved portions, under Section XII (Dispute Resolution).

37.     If the submission is disapproved in whole or in part pursuant to Paragraph 35(c)

11

or (d), GPA shall, within 60 Days or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the plan, report, or other item, or disapproved portion thereof, for approval, in accordance with the preceding Paragraphs.  If the resubmission is approved in whole or in part, GPA shall proceed in accordance with the preceding Paragraph.

38.     Any stipulated penalties applicable to the original submission, as provided in Section X (Stipulated Penalties), shall accrue during the 60-Day period or other specified period, but shall not be payable unless the resubmission is untimely or is disapproved in whole or in part; provided that, if the original submission was so deficient as to constitute a material breach of GPA's obligations under this Decree, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission.

39.     If a resubmitted plan, report, or other item, or portion thereof, is disapproved in whole or in part, EPA may again require GPA to correct any deficiencies, in accordance with the preceding Paragraphs, or may itself correct any deficiencies subject to GPA's right to invoke the dispute resolution procedures set forth in Section XII (Dispute Resolution) and the right of EPA to seek stipulated penalties as provided in the preceding Paragraphs.

H.     Permits

40.     Where any compliance obligation under this Section VI (Compliance Requirements) requires a Defendant to obtain a federal, state, or local permit or approval, the Defendant shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.  The Defendant may seek relief under the provisions of Section XI (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if the Defendant has submitted timely and complete applications and has taken all other actions necessary to obtain all such permits or approvals.

I.     Applicable Implementation Plan

41.     Within 60 Days of the Effective Date, GPA shall submit a request to the Guam Environmental Protection Agency to revise the applicable implementation plan for Guam. GPA shall request that the following requirements of this Consent Decree be made part of the

applicable implementation plan for Guam: (1) the use of Low Sulfur Residual Fuel Oil at Cabras Units 1 and 2 by the Tank Refurbishment Date; (2) that Cabras Units 1 and 2 be permanently Retired by October 31, 2022; and (3) the use of either ULSD or natural gas and the installation of oxidation catalysts at Piti Units 8 and 9 by December 31, 2021.

## VII.     ADDITIONAL INJUNCTIVE RELIEF

42.     Within 30 Days of the Effective Date, GPA shall award a contract for at least 100 MW of solar power, with construction to be completed by December 31, 2021. This 100 MW of power is in addition to 25 MW of solar power that GPA has already installed at the Dandan facility.

43.     Within 30 Days of the Effective Date, GPA shall complete installation and operation of a 40 MW energy storage system. The energy storage system shall consist of: (1) a renewable integration system at the Talofofo Substation with an instantaneous delivery capacity of 16 MW and a storage capacity of 16 MW hours; and (2) a frequency regulating system at the Agana Substation with an instantaneous delivery capacity of 24 MW and a storage capacity of 6 MW hours.

## VIII.     PROHIBITION ON NETTING CREDITS OR OFFSETS

44.     Emission reductions that result from actions to be taken by Defendants after the Effective Date of this Consent Decree to comply with the requirements of this Consent Decree shall not be considered as a creditable contemporaneous emission decrease for the purpose of obtaining a netting credit or offset under the Clean Air Act's Nonattainment New Source Review and Prevention of Significant Deterioration ("PSD") programs.

45.     Nothing in this Consent Decree is intended to preclude the emission reductions generated under this Consent Decree from being considered by the Guam Environmental Protection Agency or EPA as creditable contemporaneous emission decreases for the purpose of attainment demonstrations submitted pursuant to Section 110 of the Act, 42 U.S.C. § 7410, or in determining impacts on National Ambient Air Quality Standards, PSD increment, or air quality related values, including visibility, in a Class I area.

## IX.    REPORTING REQUIREMENTS

46.    GPA shall submit the following reports:

a.    By July 31st and January 31st of each year after the lodging of this Consent Decree, until termination of this Decree pursuant to Section XX (Termination), GPA shall submit to EPA by email a complete and accurate semi-annual report for the preceding six months that shall include (i) the status of any construction or compliance measures; (ii) any milestones completed; (iii) any problems encountered or anticipated, together with implemented or proposed solutions; (iv) a list of all necessary permits and the status of the application for each permit; and, (v) beginning on December 31, 2021, a summary of daily records of fuel usage for Piti Units 8 and 9; and (vi) beginning on the Tank Refurbishment Date established pursuant to Paragraph 29, a summary of daily records of fuel usage for Cabras Units 1 and 2.

b.    The report shall also include a description of any non-compliance with the requirements of this Consent Decree, an explanation of the violation's likely cause, and of the remedial steps taken, or to be taken, to prevent or minimize such violation.  If GPA violates, or has reason to believe that it may violate, any requirement of this Consent Decree, GPA shall notify the United States of such violation and its likely duration, in writing, within fifteen business days of the Day GPA first becomes aware of the violation, with an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation.  If the cause of a violation cannot be fully explained at the time the report is due, GPA shall so state in the report.  GPA shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within 30 Days of the Day GPA becomes aware of the cause of the violation. Nothing in this Paragraph or the following Paragraph relieves GPA of its obligation to provide the notice required by Section XI (Force Majeure).

47.    Whenever any violation of this Consent Decree or any other event affecting a Defendant's or the Defendants' performance under this Decree, or the performance of their Facilities, may pose an immediate threat to the public health or welfare or the environment,

14

Defendant(s) shall notify EPA orally or by electronic or facsimile transmission as soon as possible, but no later than 24 hours after Defendant(s) first knew of the violation or event. This procedure is in addition to the requirements set forth in the preceding Paragraph.

48.     All reports shall be submitted to the persons designated in Section XVI (Notices).

49.     Each report submitted by GPA under this Section shall be signed by an official of GPA and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I have no personal knowledge that the information submitted is other than true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

50.     This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

51.     The reporting requirements of this Consent Decree do not relieve Defendants of any reporting obligations required by the Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

52.     Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## X.     STIPULATED PENALTIES

53.     GPA shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified below, unless excused under Section XI (Force Majeure). A violation includes failing to perform any obligation required by the terms of this Decree,

15

including any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

54. <u>Late Payment of Civil Penalty</u>. If GPA fails to pay the civil penalty required to be paid under Section V (Civil Penalty) when due, GPA shall pay a stipulated penalty of $1,500 per Day for each Day that the payment is late.

55. <u>Compliance Milestones</u>. The following stipulated penalties shall accrue per violation per Day for each violation of the requirements specified below:

  a. Failure to meet interim deadlines or to timely submit Deliverables as set forth in Paragraphs 12 through 17 relating to the Fuel Delivery System, $500 per Day.

  b. Failure to meet final construction deadline in Paragraph 18 relating to the Fuel Delivery System, $1,000 per Day.

  c. Failure to complete installation of oxidation catalysts at Piti Units 8 and 9 pursuant to Paragraph 22, $1,000 per Day.

  d. Failure to convert Piti Units 8 and 9 to ULSD pursuant to Paragraph 22, $1,000 per Day.

  e. Failure to use only ULSD at Piti Units 8 and 9 after December 31, 2021, pursuant to Paragraph 22, $1,000 per Day for the first 30 Days of noncompliance, $3,000 per Day for the 31st through 60th Day of noncompliance, and $5,000 per Day thereafter for either Unit or both Units.

  f. Failure to meet interim deadlines or to timely submit Deliverables as set forth in Paragraphs 26 and 27 relating to the new power plant, $500 per Day.

  g. Failure to commence operation of 180 MW of new generating power at the new power plant by October 31, 2022, pursuant to Paragraph 28, $1,000 per Day for the first 30 Days of noncompliance, $1,500 per Day for the 31st through 60th Day of noncompliance, and $2,000 per Day thereafter.

  h. Failure to use only Low Sulfur Residual Fuel Oil at Cabras Units 1 and 2 after the Tank Refurbishment Date pursuant to Paragraph 29, $1,000 per Day for the first 30

16

Days of noncompliance, $2,000 per Day for the 31st through 60th Day of noncompliance, and $5,000 per Day thereafter for either Unit or both Units.

        i.      Failure to Retire Cabras Units 1 and 2 by October 31, 2022, pursuant to Paragraph 32, $1,000 per Day for the first 30 Days of noncompliance, $3,000 per Day for the 31st through 60th Day of noncompliance, and $5,000 per Day thereafter for either Unit or both Units.

        j.      Failure to Retire Cabras Units 3 and 4 pursuant to Paragraph 33, $1,000 per Day for either Unit or both Units.

        k.      Failure to Retire Tanguisson Units 1 and 2 pursuant to Paragraph 34, $1,000 per Day for either Unit or both Units.

        l.      Failure to submit a complete application for permits required pursuant to Paragraph 40, $250 per Day for the first 30 Days of noncompliance, $500 per Day for the 31st through 60th Day of noncompliance, and $1,000 per Day thereafter for each application.

        m.      Failure to create or keep complete and accurate records as required by Section VI (Compliance Requirements), $250 per Day for the first 30 Days of noncompliance, $500 per Day for the 31st through 60th Day of noncompliance, and $1,000 per Day thereafter.

        n.      Failure to submit a semi-annual report under Section IX (Reporting Requirements), $250 per Day for the first 30 Days of noncompliance, $500 per Day for the 31st through 60th Day of noncompliance, and $1,000 per Day thereafter.

        o.      Failure to implement the solar power project required pursuant to Section VII (Additional Injunctive Relief), $500 per Day for the failure to implement for the first 30 Days, and $1,500 per Day thereafter.

        p.      Failure to implement the energy storage project required pursuant to Section VII (Additional Injunctive Relief), $500 per Day for the failure to implement for the first 30 Days, and $1,500 per Day thereafter.

      56.      Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases.

17

Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

57. GPA shall pay any stipulated penalty within 30 Days of receiving the United States' written demand.

58. The United States may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

59. Stipulated penalties shall continue to accrue as provided in Paragraph 56, during any Dispute Resolution, but need not be paid until the following:

a. If the dispute is resolved by agreement or by a decision of EPA that is not appealed to the Court, GPA shall pay accrued penalties determined to be owing, together with interest, to the United States within 30 Days of the effective date of the agreement or the receipt of EPA's decision or order.

b. If the dispute is appealed to the Court and the United States prevails in whole or in part, GPA shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

c. If any Party appeals the District Court's decision, GPA shall pay all accrued penalties determined to be owing, together with interest, within 15 Days of receiving the final appellate court decision.

60. GPA shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraph 11, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

61. If GPA fails to pay stipulated penalties according to the terms of this Consent Decree, GPA shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due. Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for GPA's failure to pay any stipulated penalties.

62. The payment of penalties and interest, if any, shall not alter in any way

Defendants' obligation to complete the performance of the requirements of this Consent Decree.

63.     Non-Exclusivity of Remedy.  Stipulated penalties are not the United States' exclusive remedy for violations of this Consent Decree.  Subject to the provisions of Section XIV (Effect of Settlement/Reservation of Rights), the United States expressly reserves the right to seek any other relief it deems appropriate for GPA's violation of this Decree or applicable law, including, but not limited to, an action against GPA for statutory penalties, additional injunctive relief, mitigation or offset measures, and/or contempt.  However, the amount of any statutory penalty assessed for a violation of this Consent Decree shall be reduced by an amount equal to the amount of any stipulated penalty assessed and paid pursuant to this Consent Decree.

## XI.     FORCE MAJEURE

64.     "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendant(s), of any entity controlled by a Defendant, or of Defendant's contractors, that delays or prevents the performance of any obligation under this Consent Decree despite best efforts of Defendant(s) to fulfill the obligation.  The requirement that the Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (a) as it is occurring and (b) following the potential force majeure, such that the delay and any adverse effects of the delay are minimized.  "Force Majeure" does not include Defendants' financial inability to perform any obligation under this Consent Decree.

65.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, the Defendant(s) shall provide an initial notice orally or by electronic or facsimile transmission to the United States and EPA as soon as practicable, but in any event within 72 hours of when that Defendant first knew that the event might cause a delay.  Within fourteen Days thereafter, the Defendant(s) shall provide in writing to the United States and EPA an explanation and

description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendant's/Defendants' rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of the Defendant(s), such event may cause or contribute to an endangerment to public health, welfare or the environment. The Defendant(s) shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude the Defendant(s) from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. A Defendant shall be deemed to know of any circumstance of which the Defendant, any entity controlled by Defendant, or Defendant's contractors knew or should have known.

66.     If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. EPA will notify the Defendant(s) in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

67.     If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify the Defendant(s) in writing of its decision.

68.     If a Defendant elects to invoke the dispute resolution procedures set forth in Section XII (Dispute Resolution), it shall do so no later than 15 Days after receipt of EPA's notice. In any such proceeding, the Defendant shall have the burden of demonstrating by clear and convincing evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that the Defendant complied with the requirements of Paragraphs 64

and 65. If the Defendant carries this burden, the delay at issue shall be deemed not to be a violation by the Defendant of the affected obligation of this Consent Decree identified to EPA and the Court.

## XII. DISPUTE RESOLUTION

69. Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. A Defendant's failure to seek resolution of a dispute under this Section shall preclude the Defendant from raising any such issue as a defense to an action by the United States to enforce any obligation of the Defendant arising under this Decree.

70. _Informal Dispute Resolution_. Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when a Defendant sends the United States a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed 30 Days from the date the dispute arises, unless that period is modified by written agreement by the relevant Parties. If the relevant Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 30 Days after the conclusion of the informal negotiation period, the notifying Defendant invokes formal dispute resolution procedures as set forth below.

71. _Formal Dispute Resolution_. The notifying Defendant shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting the Defendant's position and any supporting documentation relied upon by the Defendant.

72. The United States shall serve its Statement of Position within 45 Days of receipt of the notifying Defendant's Statement of Position. The United States' Statement of Position

shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States. The United States' Statement of Position shall be binding on the Defendant, unless the Defendant files a motion for judicial review of the dispute in accordance with the following Paragraph.

73. The notifying Defendant may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XVI (Notices), a motion requesting judicial resolution of the dispute. The motion must be filed within ten Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph. The motion shall contain a written statement of the notifying Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

74. The United States shall respond to the notifying Defendant's motion within the time period allowed by the Local Rules of this Court. Defendant may file a reply memorandum, to the extent permitted by the Local Rules.

75. <u>Standard of Review</u>.

a. <u>Disputes Concerning Matters Accorded Record Review</u>. Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 71 pertaining to the adequacy or appropriateness of plans, procedures to implement plans, schedules or any other items requiring approval by EPA under this Consent Decree; the adequacy of the performance of work undertaken pursuant to this Consent Decree; and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, the notifying Defendant shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

b. <u>Other Disputes</u>. Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 71, the notifying Defendant shall bear the burden of demonstrating that its position complies with this Consent Decree and better furthers the

22

Objectives of the Consent Decree.

76.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of the Defendant(s) under this Consent Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 59.  If the Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section X (Stipulated Penalties).

### XIII.     INFORMATION COLLECTION AND RETENTION

77.     The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry into any facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

        a.     monitor the progress of activities required under this Consent Decree;

        b.     verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

        c.     obtain samples and, upon request, splits of any samples taken by a Defendant or its representatives, contractors, or consultants;

        d.     obtain documentary evidence, including photographs and similar data; and

        e.     assess a Defendant's compliance with this Consent Decree.

78.     Upon request, the Defendants shall provide EPA or its authorized representatives splits of any samples taken by the Defendants.  Upon request, EPA shall provide the Defendants splits of any samples taken by EPA.

79.     Until five years after the termination of this Consent Decree, each Defendant shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner

to the Defendant's performance of its obligations under this Consent Decree. This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the United States, a Defendant shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

80. At the conclusion of the information-retention period provided in the preceding Paragraph, each Defendant shall notify the United States at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States, the Defendant shall deliver any such documents, records, or other information to EPA. The Defendant may assert that certain documents, records, or other information are privileged under the attorney-client privilege or any other privilege recognized by federal law. If a Defendant asserts such a privilege, it shall provide the following: (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted by the Defendant. However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

81. A Defendant may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that a Defendant seeks to protect as CBI, the Defendant shall follow the procedures set forth in 40 C.F.R. Part 2.

82. This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal laws, regulations, or permits, nor does it limit or affect any duty or obligation of a Defendant to maintain documents, records, or other information imposed by applicable federal or Guam laws, regulations, or permits.

24

## XIV. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

83.     This Consent Decree resolves the civil claims of the United States for the violations alleged in the Complaint filed in this action through the date of lodging.

84.     The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree.  This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal laws, regulations, or permit conditions, except as expressly specified in Paragraph 83.  The United States further reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, the Defendants' Facilities, whether related to the violations addressed in this Consent Decree or otherwise.

85.     In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, other appropriate relief relating to the Facilities or a Defendant's violations, the Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 83.

86.     This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations.  The Defendants are responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and the Defendants' compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein.  The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that the Defendants' compliance with any aspect of this Consent Decree will result in compliance with provisions of the Act, 42 U.S.C. § 7401, *et seq.*, or with any other provisions of federal, State, or local laws, regulations, or permits.

87. This Consent Decree does not limit or affect the rights of the Defendants or of the United States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against the Defendants, except as otherwise provided by law.

88. This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XV. COSTS

89. The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by GPA.

## XVI. NOTICES

90. Unless otherwise specified in this Decree, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

As to the United States by email: eescdcopy.enrd@usdoj.gov
Re: DJ #90-5-2-1-11000

As to the United States by mail: EES Case Management Unit
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Re: DJ #90-5-2-1-11000

As to EPA: Section Chief
Air & TRI Section
Enforcement Division (ENF-2-1)
U.S. Environmental Protection Agency,
Region IX
75 Hawthorne Street
San Francisco, CA 94015

As to GPA: John M. Benavente, P.E.
General Manager
Guam Power Authority
P.O. Box 2977

Hagatna, GU  96932

and

Graham Botha
General Counsel
Guam Power Authority
P.O. Box 2977
Hagatna, GU  96932

As to MEC:     Rino T. Manzano
         Marianas Energy Company, L.L.C.
         180 Cabras Highway
         Piti, GU  96915

91. Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

92. Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XVII. EFFECTIVE DATE

93. The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XVIII. RETENTION OF JURISDICTION

94. The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections XII (Dispute Resolution) and XIX (Modification), or effectuating or enforcing compliance with the terms of this Decree.

## XIX. MODIFICATION

95. The terms of this Consent Decree may be modified only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

96. Any disputes concerning modification of this Decree shall be resolved pursuant

27

to Section XII (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 75, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XX.    TERMINATION

97.    This Consent Decree shall terminate with respect to MEC when either one of the following conditions have been met:

a.    ownership and operation of Piti Units 8 and 9 revert to GPA; or

b.    MEC has exclusively used ULSD or natural gas as the fuel powering Piti Units 8 and 9 for a period of twelve (12) consecutive months.

98.    MEC shall initiate termination of this Consent Decree with respect to MEC by submitting a notification to the United States that either of the two conditions for termination pursuant to Paragraph 97 has been satisfied.  If the United States agrees with MEC's notification, then MEC and the United States shall file a joint motion or stipulation for termination of this Consent Decree with regard to MEC.  If the United States does not agree that the Consent Decree may be terminated, MEC may invoke Dispute Resolution under Section XII of this Consent Decree.

99.    This Consent Decree shall terminate with respect to GPA when all of the following conditions have been met:

a.    GPA has satisfactorily complied with all of the requirements set forth in Section VI (Compliance Requirements) for a period of not less than twelve (12) consecutive months; and

b.    all of the applicable requirements set forth in Paragraph 41 have been included in the applicable implementation plan for Guam; and

c.    GPA has completed all of the actions required by Section VII (Additional Injunctive Relief); and

d.    GPA has paid the civil penalty as set forth in Section V (Civil Penalty), and any stipulated penalties demanded, as specified in Section X (Stipulated Penalties);

100.    GPA shall initiate termination of this Consent Decree by submitting a notification to the United States that all conditions for termination pursuant to Paragraph 99 have been satisfied.  If the United States agrees with GPA's notification, then GPA and the United States shall file a joint motion or stipulation for termination of this Consent Decree with regard to GPA.  If the United States does not agree that the Consent Decree may be terminated, GPA may invoke Dispute Resolution under Section XII of this Consent Decree.

101.    Following receipt by the United States of a Defendant's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether that Defendant has satisfactorily complied with the requirements for termination of this Consent Decree.  If the United States agrees that the Decree may be terminated as to that Defendant, the relevant Parties shall submit, for the Court's approval, a joint motion or stipulation terminating the Decree as to that Defendant.

102.    If the United States does not agree that the Decree may be terminated, the requesting Defendant may invoke Dispute Resolution under Section XII.  However, the requesting Defendant shall not seek Dispute Resolution of any dispute regarding termination until 60 Days after service of its Request for Termination or receipt of an adverse decision from the United States, whichever is earlier.

## XXI.    PUBLIC PARTICIPATION

103.    This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate.  The Defendants consent to entry of this Consent Decree without further notice and agree not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified the Defendants in writing that it no longer supports entry of the Decree.

## XXII.    SIGNATORIES/SERVICE

104.    Each undersigned representative of the Defendants and the Assistant Attorney

29

General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

105. This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis. The Defendants agree to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons. Defendants need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XXIII. INTEGRATION

106. This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein. Other than Deliverables that are subsequently submitted and approved pursuant to this Decree, the Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree.

## XXIV. FINAL JUDGMENT

107. Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and the Defendants.

 **/s/ Frances M. Tydingco-Gatewood**
**Chief Judge**
**Dated: Apr 20, 2020**

Signature page for <u>United States of America v. Guam Power Authority and Marianas Energy Company, L.L.C.</u> Consent Decree, subject to the public notice and comment provisions of 28 C.F.R. § 50.7:

FOR THE UNITED STATES OF AMERICA:

2/4/20
Date

JEFFREY BOSSERT CLARK
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

1/16/2020
Date

VALERIE K. MANN
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice

SHAWN N. ANDERSON
United States Attorney
Districts of Guam and NMI

1/16/2020
Date

/s/ Mikel W. Schwab
MIKEL W. SCHWAB
Assistant U.S. Attorney

31

Signature page for <u>United States of America v. Guam Power Authority and Marianas Energy Company, L.L.C.</u> Consent Decree, subject to the public notice and comment provisions of 28 C.F.R. § 50.7:

FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY:

12/17/2019

Date

SYLVIA QUAST
Regional Counsel
U.S. Environmental Protection Agency, Region IX

OF COUNSEL:
ALLAN ZABEL
Senior Counsel, Air & Toxics Section II
Office of Regional Counsel
U.S. Environmental Protection Agency, Region IX

32

Signature page for <u>United States of America v. Guam Power Authority and Marianas Energy</u>
<u>Company, L.L.C.</u> Consent Decree

FOR GUAM POWER AUTHORITY

12-6-19
Date

JOHN M. BENAVENTE, P.E.
General Manager
Guam Power Authority
P.O. Box 2977
Hagatna, GU 96932

12/6/19
Date

D. GRAHAM BOTHA
General Counsel
Guam Power Authority
P.O. Box 2977
Hagatna, GU 96932

33

4819-3139-7291.v1

1  Signature page for <u>United States of America v. Guam Power Authority and Marianas Energy</u>

2  <u>Company, L.L.C.</u> Consent Decree

3

4  FOR MARIANAS ENERGY COMPANY, L.L.C.

5

6  12/16/2019                        藤岡　崇博
   _____                    _____
7  Date                            TAKAHIRO FUJIOKA
                                   MEC Management Committee Chairman
8                                  Marianas Energy Company, L.L.C.
                                   180 Cabras Highway
9                                  Piti, GU  96915

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

34

4819-3139-7291.v1